UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE LYNNE KOSILEK, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>THOMAS A. TURCO III, )<br>Massachusetts Commissioner )<br>of Correction, )<br>    Defendant. ) | CIVIL ACTION<br>NO. |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

#### I. INTRODUCTION

1. This is a civil action for declaratory and injunctive relief brought by the plaintiff. Plaintiff once again seeks injunctive relief for an ongoing, painful violation of her federal civil right to proper medical treatment for gender dysphoria. Plaintiff believes that res judicata does not apply to her when her underlying illness is being ignored, while meaningless, ineffective treatment options are being offered. Like offering a painkiller for cancer instead of the necessary chemotherapy, this approach offers the plaintiff nothing but the surety that she will continue to suffer every day until she dies. Plaintiff will not suffer silently, particularly when the rules and/or laws requiring specific treatment have evolved, while the defendant's counsel was securing a reversal of this Court's

order for surgery through false statements to the First Circuit Court of Appeals. Plaintiff believes that the U.S. Supreme Court standard on res judicata, cited eloquently by this Court in plaintiff's previous civil action, offers an interpretation of res judicata that clearly allows plaintiff to re-litigate. Montana v. United States, 440 U.S. 147, 154-55 (1979). The rule/law change that this plaintiff alluded to is 45 C.F.R. § 92.206-07. Plaintiff has been asking employees of defendant Turco's contracted medical/mental health provider to abide by their mandate as a recipient of federal funds for prisoner health care since the changes to 45 C.F.R. § 92 went into effect early in 2016. This federal regulation prohibits denial or limitations in the provision of transition-related health care services for patients with gender dysphoria (see Exhibit 3 attached to plaintiff's affidavit hereto). As a prisoner and a Medicaid recipient, plaintiff is now covered by 45 C.F.R. § 92.206-07 ("controlling facts ... changed significantly" "special circumstances." Montana v. United States, 440 U.S. 147, 154-55 (1979)). Plaintiff prays that this Honorable Court agrees, as defendant has ignored all treatment requests. This filing is also intended to clarify this plaintiff's right to treatment vis-a-vis defendant's insistence that facial hair removal is the only medical treatment other than hormone therapy that defendant will

provide. This stance belies defendant's purported treatment prtocol, described in paragraphs one and two of Exhibit 13 attached to plaintiff's affidavit hereto, and has been confirmed by District Court Judge Richard C. Stearns (see Exhibit 8 attached to plaintiff's affidavit hereto). Plaintiff's right to electrolysis and/or other treatment options has never been decided by this Court, and is now ripe for adjudication. (see Exhibit 1, Memorandum and Order by District Court Judge Mark L. Wolf attached to plaintiff's affidavit hereto). The fraudulent claim by defendant's counsel that resulted in a reversal of this Court's order for what is now referred to as gender-affirming surgery surely qualifies as one of the "special circumstances" that would "warrant an exception to the normal rules of preclusion," Montana v. United States, 440 U.S. 147, 154-55 (1979).

## II. JURISDICTION

2. This civil action is brought pursuant to 42 USC § 1983, 28 USC § 2201 and 2202, 45 C.F.R. § 92-206-07, and the Eighth and Fourteenth Amendments to the United States Constitution. Asserting a claim to pendent juridiction for this Court to consider claims under the Statutes and Constitution of the Commonwealth of Massachusetts, plaintiff also cites the jurisdiction of the Division of Insurance Bulletin 2014-03, which has language defining the rights of

all transgender citizens of Massachusetts that mirrors the mandate of 45 C.F.R. § 92.206-07. See the Bulletin as Exhibit 2 attached to plaintiff's affidavit hereto.

### III. PARTIES

3. Plaintiff, Michelle Lynne Kosilek, is a prisoner, serving a life sentence, and currectly confined to the MCI-Norfolk, 2 Clark Street, P.O. Box 43, Norfolk, MA 02056.

4. Defendant, Thomas A. Turco III, is the current Massachusetts Commissioner of Correction, identified as the final arbiter of medical treatment for gender dysphoria, a role that applies only to this one medical diagnosis. For that reason, he or his successor will be the only defendant, acting in his official capacity under color of state law. His business address is, 50 Maple Street, Suite 3, Milford, MA 01757-3698.

### IV. FACTUAL ALLEGATIONS

5. Depsite a change to state law that recognizes plaintiff's gender as female (see Exhibit 15 attached to plaintiff's affidavit hereto), the defendant continues to house plaintiff in a male prison based on plaintiff's male genitals, which defendant refuses to have surgically corrected. This psyco-sexual incongruity is the source of daily misery, a condition known in the medical filed as gender dysphoria. The medically-recommended treatment for plaintiff's condition is gender-affirming surgery, formerly called sex-change or sex-reassignment surgery.

6. In response to the Department of Correction's ("DOC") refusal to recognize the legal right of transgender prisoners to express their perceived gender, the state legislature passed and Governor Baker signed the Criminal Justice Reform Bill on April 13, 2018, with Section 91 granting new rights to transgender prisoners (see Exhibit 5 attached to plaintiff's affidavit hereto). Every act of the DOC thus far indicates that they will resist sending plaintiff or any other prisoner to the women's prison when Section 91 goes into effect on December 31, 2018 (see Exhibit 8, Judge Stearns' ruling in Doe v. DOC, 17-12255-RGS dated 6-14-18, attached to plaintiff's affidavit hereto) because defendant won't transfer us without gender-affirmiing surgery, but won't allow contracted medical staff to make such a recommendation.

7. This comes six years after this Court recognized the medical necessity of such surgeries, and ordered it for this plaintiff. That order was eventually reversed by the First Circuit Court of Appeals, based on false claims by defendant's counsel.

8. During the trial in District Court, plaintiff had also attempted to obtain a ruling on the medical-necessity and/or efficacy of permanent facial hair-removal. With an eye toward fairness, this Court had ordered an independent evaluation. When the evaluation was never done, this Court

denied plaintiff's motion without prejudice. When the Court learned on November 19, 2012 that defendants had stopped plaintiff's facial hair removal based on expense, the Court—Judge Mark L. Wolf presiding—instructed counsel for plaintiff to file another civil action, stating that all evidence from plaintiff's previous civil actions would be admissible in Kosilek III (see colloquy, transcript of November 19, 2012). Both attorneys for plaintiff declined to follow the Court's instruction, despite repeated requests by plaintiff. After the En Banc reversal and denial of certiorari by the Supreme Court, both attorneys withdrew their representation of plaintiff. The petition for certiorari never mentioned that the reversal of Judge Wolf's ruling was achieved by a false treatment claim by counsel for defendant.

9. Following the First Circuit's reversal, plaintiff wrote to Judge Kayatta, who had dissented, outlining the above-referenced deceit by Attorney Richard C. McFarland. Receiving no response, plaintiff filed a civil action in state court. Not long afterward, plaintiff wrote to Judge Thompson who had also dissented, discussing sanctions against Attorney McFarland. (see Exhibit 14 attached to plaintiff's affidavit hereto). Sadly, Judge Thompson never replied, despite her compassionate dissent.

10. After all three levels of state courts dismissed plaintiff's civil action—completely ignoring plaintiff's proof of malfeasance and new facts—plaintiff learned that

other transgender prisoners in Massachusetts were receiving permanent facial hair-removal. The provider contract had been changed to require this treatment while the defendant was still denying it to plaintiff for several years. Plaintiff eventually convinced her therapist to advocate for this treatment, and began receiving electrolysis again in January of 2018. Plaintiff has now received 25 of the 32 approved treatments, with no reduction in plaintiff's sense of dysphoria. Plaintiff is grateful for the partial removal of facial hair, as any woman would be; but it wouldn't change any woman's compelling need for surgery on a disfigured vagina. That is essentially what a pre-surgical transgender woman has; misshaped genitals which force others to see her as male, and treat her accordingly.

11. Despite this Court's order of December 2009 for an expert opinion on the necessity and/or efficacy of facial hair-removal, none has ever been consulted. Yet now this plaintiff's therapist is using language like "transition to being a complete woman" as plaintiff's goal, without identifying any steps toward achieving this goal, as she is not allowed to. This is a violation of plaintiff's right to equal protection and also constitutes sex-discrimination under state and federal medical regulations, pursuant to the Fourteenth Amendment to the Constitution, 42 USC § 1983, 45 C.F.R. § 92, and Division of Insurance regulations

identified in Bulletin 2014-03 (see Exhibit 7 of plaintiff's treatment plan, attached to plaintiff's affidavit hereto)

12. These facts question the validity of a policy or practice that defines electrolysis as a one-size-fits all final treatment option for transgender women whose pain can only be relieved by gender-affirming surgeries. The defendant's medical policy and the provider contract, ironically require adherence to the standards of care ("SOC") of the World Professional Association for Transgender Health ("WPATH"). The policy, 103 DOC 652.06 (A)(1) requires individualized treatment plans, "utilizing prudent, professional standards, to include the most current version of the Standards of Care set forth by the World Professional Association for Transgender Health." See Exhibit 16 attached to plaintiff's affidavit hereto). The WPATH Standards of Care not only says gender-affirming surgery is medically-necessary, Chapter 14 on institutionalized patients actually mentions this plaintiff!

Wherefore, plaintiff, Michelle Lynne Kosilek requests that this Honorable Court:

a. enters a declaratory judgment, adjuding the aforesaid acts and omissions of the defendant to be in violation of the federal and state statutory and constitutional rights of this plaintiff ;

b. enters a permanent injunction ordering the defendant to immediately transfer plaintiff to the MCI-Framingham (womens' facility);

c. enters a permanent injunction ordering the defendant or his successor in office to immediately have his contracted medical provider to schedule plaintiff for gender-affirming surgery;

d. such other and further relief as this Honorable Court deems just, proper common decency, and equitable.

Respectfully submitted,

*Michelle Lynne Kosilek*
Michelle Lynne Kosilek, pro se
MCI-Norfolk
2 Clark Street, P.O. Box 43
Norfolk, MA 02056

## VERIFICATION OF COMPLAINT

I, hereby state and affirm that I am the plaintiff in the above-entitled Complaint, that I have read the Complaint and know the contents therein, and that those facts are true.

Signed under the pains and penalties of perjury this 23rd day of August 2018.

*Michelle Lynne Kosilek*
Michelle Lynne Kosilek