UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MICHELLE LYNNE KOSILEK. )

    Plaintiff )

       v. )   Civil Action No. 18-11838 DLC

CAROL A. MICI, COMMISSIONER )

MASS. DEPT. OF CORRECTION, )

    Defendant )

PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S

MOTION FOR SUMMARY JUDGMENT

BACKGROUND

Now comes the plaintiff in the above-captioned civil action and moves this Honorable Court to deny defendant's Motion For Summary Judgment. In support thereof, plaintiff offers the following:

Plaintiff's battle for normalizing medical care began in November of 1992. During the ensuing decades, defendant has employed every possible deceit--including subornation of perjury which Judge Wolf noted but declined to prosecute--all designed to prevent a medical procedure that all experts agreed was medically necessary, including their own contract medical staff. And although the current defendant was appointed long after

this pattern of delay, denial and deception was perfected by Atty. Richard C. McFarland, et al, defendant's current counsel has witnessed and helped to implement every twist and turn of the pattern's development, as second chair to her mentor McFarland at the first trial. Attorney McFarland's final act of deceit was to defraud the First Circuit Court of Appeals. Making a false claim that plaintiff was receiving adequate medical treatment in the form of electrolysis, Attorney McFarland convinced the En Banc panel to review the evidence de novo, reversing Judge Wolf's decision that plaintiff was entitled to gender-affirming surgery. (At the time it was called sex-reassignment) The de novo review was a clear violation of established U.S. Supreme Court precedent, as the finder of fact made no Constitutional errors in his ruling. In his order of dismissal (Plaintiff's Exhibit 1 (a) ) Judge Wolf confirmed the fraud that had been perpetrated on the First Circuit, to preserve the issue for possible future litigation. Defendant's resistance to providing plaintiff's medical care---and the fraud on the First Circuit---resulted in the Department of Correction's medical provider contract being rewritten to offer electrolysis to all the transgender women in their custody. Yet they continued to deny the completion of the plaintiff's electrolysis for several years, and it is still not finished. Because of the defendant's continued opposition, plaintiff and other advocates finally convinced the State Legislature to add a section to the Criminal Justice Reform Act that allowed transgender prisoners to be housed in a prison that comported with their perceived gender; their sense of self.

The Act was signed into law by Governor Baker in the Spring of 2018, yet the DOC didn't transfer plaintiff until September of 2019, necessitating this civil action in the interim, and the associated costs.

Shortly after her arrival at Framingham, plaintiff was graciously invited to contribute to the wording of a new law, by a member of the Governor's Commission for Health & Safety of LGBTQ prisoners, a Commission created by the Criminal Justice Reform Act. The new law, The Rights Act is intended to prevent anyone else from being denied dignity and medical treatment as the plaintiff has been. It is currently awaiting action at the Statehouse, as Senate .1566 and House. 2484.

## CONTINUING EQUAL PROTECTION VIOLATIONS

Unfortunately, the 14th Amendment rights of plaintiff and other trans-gender prisoners are still being violated. Although this case is not a class-action, settling or dismissing it would at this point be unthinkable, in light of the fact that defendant's counsel declined to address what the Rights Act proposes to eliminate: the collective Equal Protection violations of all similarly-situated prisoners referenced in Stipulation #2 of plaintiff's Motion For Settlement/Dismissal. So until the Rights Act is passed by the State Legislature, and signed by the Governor, the Court needs to know the following for context:

Twenty-seven months after plaintiff was transferred to the women's prison, none of the remaining transgender women in the men's prisons have followed. At least one that the plaintiff is aware of --Teresa Brugliera – was told that she would be transferred, and was allegedly approved for gender-affirming surgery, that would only be provided if she had an incident-free year. And another transgender woman, sentenced to Framingham by the Superior Court of Massachusetts, is seriously depressed ( as she recently told the plaintiff) because she is being denied any further gender-related medical treatment unless she also spends a specific trouble-free period of time here. This practice of incentive-based provision (or non-provision) of medically necessary

treatment is only applied to transgender prisoners. For the transgender men receiving male hormones to masculinize their bodies, all have achieved the desired effect, but in a cruel twist of fate, all have also been denied the very-necessary breast-removal surgeries that would allow them to begin to feel normal. This cruel practice forces them to appear and sound very masculine, with uncomfortably obvious female parts. Plaintiff has advocated for all of the above-referenced transprisoners with Prisoners' Legal Services and the firm of Choate, Hall & Stewart that is assisting PLS to investigate conditions of confinement at Framingham, and also with the Governor's Commission on Health & Safety of LGBTQ prisoners. All of the above could have already been addressed if defendant's counsel had simply agreed to Stipulation #2 in plaintiff's very reasonable Motion for Settlement/Dismissal, which she received in December of 2020. Counsel declined, stating " I don't have that authority". The additional year of all those transfolks' unnecessary suffering is plaintiff's primary reason for the foregoing being presented for the Court's edification. From plaintiff's perspective, the pain of waiting two years more for her healing surgery because of thoughtless delays by the former Director of Behavioral Health has been augmented by an unlawful "rule" invented by a former Director of Security at Framingham. As a result of inappropriate and seductive behaviors by one or two insecure women (who aren't even here at Framingham anymore) a practice of no longer allowing women to wear white tee-shirts as an outer garment now exists. Plaintiff has attempted to inform staff on the law related to prisoner property, to no avail. 103 CMR 491 contains no language that allows prisons to alter it, and the DOC's vendor still sells us white tee-shirts, but after two years, I was told that I can't wear the ones I brought with me, while the transwomen I left behind can! My Grievance was unlawfully denied, with no investigation as required by 103CMR491.15 (3),(d), (1), that would have resulted in a determination that the

Grievance had merit! Plaintiff's quote from Blake v Hall 668 F2d 52 (1981), which is honored in the men's prisons, was ignored. (See Exhibits A B C D, attached to this Motion.)

Plaintiff apologizes for this late reportage, but as the Exhibits reveal, plaintiff was not challenged on the tee-shirt issue until she had been at Framingham for almost two years. Despite ignoring their legal mandate to investigate the case law, administrators took four months to just say no.

## CONCLUSION

In conclusion, it was the Criminal Justice Reform Act that resulted in the plaintiff being transferred and receiving her long-awaited surgery. It was not a sudden change of heart by the defendant. Accordingly, plaintiff moves this Honorable Court to deny defendant's Motion For Summary Judgment, and/or any other attempt to end this litigation without plaintiff being compensated for her costs on this civil action, as requested in plaintiff's Motion For Settlement/Dismissal, to wit:

$350.00 for the filing fee, and mailing costs of $68.22, a total of $418.22.

Respectfully Submitted

*Michelle Lynne Kosilek*
Michelle Lynne Kosilek, Pro Se

CERTIFICATE OF SERVICE

On this date, 1/12/22 plaintiff mailed a copy of the above, by First Class Mail to Mary Eiro-Bartevyan, Counsel for Defendant, at: Dept. of Correction, Legal Division 70 Franklin Street, Suite 600, Boston, MA 02110-1327