UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE LYNNE KOSILEK,<br><br>        Plaintiff,<br><br>v.<br><br>CAROL MISI, Massachusetts Commissioner of Correction,<br><br>        Defendant. | No. 18-cv-11838-DLC |

**MEMORANDUM AND ORDER RE:
PLAINTIFF'S MOTION TO AMEND COMPLAINT AND STRIKE PORTION OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 100) AND
MOTION FOR INJUNCTIVE RELIEF (DKT. NO. 103)**

Cabell, U.S.M.J.

### I.  INTRODUCTION

Plaintiff Michelle Lynne Kosilek, a transsexual female, is serving a life sentence in the Massachusetts state prison system. For many years, through previous lawsuits, Kosilek sought gender-affirming surgery from the Department of Corrections (DOC) for her gender dysphoria.  In 2012 the district court found that the DOC's refusal to provide Kosilek with surgery violated her Eighth Amendment rights, *see Kosilek v. Spencer*, 889 F. Supp. 2d 190 (D. Mass. 2012), but the First Circuit, sitting *en banc*, reversed that ruling.  *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) (*en banc*).

In 2018, when Kosilek was housed at MCI-Norfolk, she commenced this action, alleging that, under regulations implemented by the federal Department of Health and Human Services in 2016 and subsequent treatment protocols for transgender prisoners, she was entitled to her gender-affirming surgery.  Kosilek did not seek damages; rather, she (1) requested a declaratory judgment that the defendant's acts and omissions had violated her constitutional rights, and (2) sought injunctive relief ordering her transfer to the female facility at MCI-Framingham, and the scheduling of her surgery.

Kosilek essentially achieved her goals during the pendency of this suit:  On September 9, 2019, DOC officials transferred Kosilek to MCI-Framingham and, on August 31, 2021, DOC providers performed her gender-affirming surgery.

Against that backdrop, Kosilek now moves to amend her complaint to add a series of new claims.  [Dkt. No. 100].  She also moves through the same motion to strike certain portions of the defendant's presently pending motion for summary judgment.  As grounds for the request to strike, she contends that the defendant erroneously contended that the Commissioner had no control over the medical provider's clinical decision-making process.  [Id.]. Kosilek avers that while the Gender Dysphoria (GD) Treatment Committee supposedly approved her surgery on April 20, 2020, the

Commissioner did not allow the medical provider to refer the plaintiff for surgery until an attorney intervened on her behalf.

In addition to the motion to amend and to strike, Kosilek has filed a motion for injunctive relief to obtain a single occupancy cell, something she claims the *en banc* decision in *Spencer* mandated. [Dkt. No. 103].

The Commissioner opposes both motions. For the reasons stated below, the motions will be denied.

## II. FACTS

Unless otherwise stated, the following facts are undisputed: At the time Kosilek filed this lawsuit, she was housed at MCI-Norfolk, a male facility. However, on or about September 9, 2019, she was transferred to MCI-Framingham, a female facility, where she currently remains.[1]  [Dkt. No. 97, ¶¶ 2-3].

Sometime in March or April 2020, the DOC's GD Treatment Committee voted to approve gender-affirming surgery for Kosilek. [Dkt. No. 67]. While Wellpath, the DOC's independent medical provider, intended to refer Kosilek to Boston Medical Center (BMC) for her surgery, it was noted that the effect of COVID-19 on scheduling surgery was uncertain and that the then-current waiting list for gender surgery was about 22 months. [*Id.*].

---

[1] While the defendant's motion and the affidavit of Mitzi Peterson, Deputy Commissioner of Clinical Services and Reentry, both state that Kosilek was transferred on September 9, 2021, filings submitted prior to 2021 indicate that the transfer occurred on September 9, 2019. *See, e.g.,* D. 42. Therefore, the court concludes that Kosilek was transferred in 2019.

The DOC maintains that Wellpath exercises independent clinical professional judgment in making treatment decisions for inmates and that no DOC employee has any control over this decision-making. [Dkt. No. 97, ¶¶ 7, 11]. Kosilek, however, contends that the DOC had control over whether to refer inmates for surgery, and that although her surgery had been approved by April 30, 2020, she had not yet been referred to BMC as of May 20, 2020. [Dkt. No. 100, pp. 1-2]. Kosilek maintains that the DOC did not give Wellpath permission to reach out to BMC until an attorney contacted the DOC on her behalf, and that this delay, coupled with COVID-19, caused her to wait an additional two years for her surgery. [*Id.*].

Nonetheless, Kosilek had successful gender-affirming surgery on August 31, 2021 at BMC. [Dkt. No. 97, ¶¶ 12-15]. Kosilek notes, however, that in the 27 months after her transfer to MCI-Framingham, not a single other transgender woman still housed in a male facility followed. [Dkt. No. 99, p. 3]. She also says that women at MCI-Framingham are no longer permitted to wear white T-shirts as outer garments, even though the DOC vendor continues to sell white T-shirts to women. [*Id.* at pp. 4-5].

III. **DISCUSSION**

    A. *Plaintiff's Motion to Amend and Strike*

    **1. Motion to Amend**

The plaintiff seeks to amend her complaint to add "the facts

4

presented in plaintiff's Motion for Settlement/Dismissal and plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment." [Dkt. No. 100]. These facts concern difficulties she encountered in obtaining a copy of the report from the GD Treatment Committee; getting the DOC to give Wellpath permission to refer the plaintiff to BMC for surgery; the continued non-transfer of transgender female inmates to Framingham; and the inability of female inmates to wear white T-shirts.

While leave to amend a complaint should freely be given in circumstances in which justice so requires, Fed. R. Civ. P. 15(a)(2), a district court faced with such a motion must consider the totality of the circumstances. *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013). Where leave to amend is sought after discovery has been concluded and a motion for summary judgment has been filed by the defendant, the amendment must be both "'theoretically viable [and] solidly grounded in the record.'" *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (per curiam) (quoting *Hatch v. Dep't for Children, Youth, & Their Families,* 274 F.3d 12, 19 (1st Cir. 2001)); *see also Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (court should not give leave to amend when "the amendment would be futile"). Further, regardless of the context, "the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its

5

attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (internal quotations omitted).

The plaintiff's newly alleged concerns are not grounded in the present record because the present litigation concerns the plaintiff's transfer and surgery, not the availability of white t-shirts, the status of other transgender inmates, or discrimination against female prisoners in general. Also, while no discovery was conducted in this case, the parties submitted status reports for the better part of two years (in part due to delays related to COVID-19) to update the court on the DOC's consideration and eventual approval of the plaintiff's surgery. This litigation has now been pending for three years, and the addition of new claims beyond the plaintiff's transfer and surgery would essentially require starting the entire case from scratch, with additional discovery and motion practice. The impact the proposed amendment would likely have on the case in terms of the additional time and resources that would be required to investigate and adjudicate the new claims weighs heavily against amendment, particularly where the proposed claims bear no meaningful connection to the plaintiff's original claims. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011) (upholding denial of leave to amend where "adding a new claim would have required additional

6

discovery by the parties and added further delays to the proceedings"); *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 264 (D. Mass. 2011) (denying leave to amend to add new claim three years after lawsuit began and after defendant conceded liability on original claim).

Additionally, to the extent that the plaintiff seeks to advance claims on behalf of other female and/or transsexual inmates, she likely lacks standing to do so. "[A] federal court's jurisdiction . . . can be invoked only when the plaintiff [themself] has suffered 'some threatened or actual injury.'" *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)). The plaintiff must have a "personal stake in the outcome of the controversy." *Id.* at 498 (internal quotations omitted). A limited exception to this rule exists for plaintiffs who demonstrate (1) a "close" relationship with the third party whose rights the plaintiff asserts and (2) a "hindrance" to the third party's ability to protect her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (no close relationship between attorneys and unrepresented criminal defendants or hindrance to defendants); *Latin Am. Music Co. v. The Archdiocese of San Juan of Roman Cath. & Apostolic Church*, 499 F.3d 32, 46 (1st Cir. 2007) (same as to music publisher/performance rights society and composers); *see also Perez-Kudzma v. United States*, 940 F.3d 142, 145 (1st Cir. 2019) (plaintiff bears the

7

burden of establishing standing). Courts generally "have not looked favorably upon third-party standing." *Kowalski*, 543 U.S. at 130. Here, the plaintiff has not provided any basis to show that she is in the rare position of having standing to assert claims based on someone else's injuries. Without standing, the plaintiff's efforts to press third-party claims in an amended complaint would be futile, thus counseling against amendment. *See Adorno*, 443 F.3d at 126.

Taken together, the foregoing militates heavily against granting leave to amend the complaint. In short, (1) where this case has been pending since 2018, (2) and the plaintiff has long since received the relief she originally sought, (3) and seeks now to bring new unrelated claims on behalf of others whom she has not demonstrated standing to represent, (4) claims which would almost surely result in protracted and costly proceedings further delaying resolution of the case, granting leave to amend would not be in the best interests of justice. Accordingly, leave to amend the complaint is denied.

### 2. Motion to Strike

The plaintiff also moves pursuant to Fed. R. Crim. P. 12(f) to strike two items from the defendant's motion for summary judgment. First, she claims that the affidavit of DOC Deputy Commissioner Mitzi Peterson is wrong where it claims that neither Peterson nor anyone at the DOC had control over Wellpath's clinical

8

decisions. Kosilek contends that Peterson showed such control by delaying giving Wellpath permission to refer Kosilek to BMC for her surgery. Second, Kosilek asks the court to strike what she terms the "detailed description" of her method of surgery contained in both the affidavit and defendant's brief in support of its motion for summary judgment.

Under Fed. R. Crim. P. 12(f), a court "may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). Rule 12(f) applies to pleadings only, not motions for summary judgment. *See Autila v. Mass. Bay Transp. Auth.*, No. 21-cv-11677-DLC, 2022 WL 2905180, at *3 (D. Mass. July 22, 2022). Further, even if Rule 12(f) applied here, Peterson's statements are not immaterial, and the plaintiff has been given the opportunity to refute them. Also, the surgical detail of which Kosilek complains consists of only one sentence explaining that her chosen method involved less chance of infection or surgical complication. The court does not consider this information scandalous or immaterial. The request to strike is denied.

### B. *Plaintiff's Motion for Injunction*

The plaintiff moves for an injunction requiring MCI-Framingham to house her in a single cell rather than with other inmates. She claims that *Spencer* mandates single cell housing for her and that the DOC itself has argued that housing the plaintiff

9

with females could cause great anxiety for said females, who could still perceive the plaintiff as male.

The DOC argues that this motion should be denied because it has nothing to do with the issues raised in this litigation. Further, even if the motion were to be considered on its merits, *Spencer* does not require the DOC to provide Kosilek with a single cell, and no such right exists in general.

A party who moves for a preliminary injunction "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Arnella v. Craig*, No. 14-14764-FDS, 2016 WL 1555680, at *2 (D. Mass. Apr. 15, 2016) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam)); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (reversing grant of a preliminary injunction "wholly outside the issues in the suit"); *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 663 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). A sufficiently strong relationship exists "where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Pac. Radiation Oncology*, 810 F.3d at 663 (quoting *De Beers Consol. Mines*, 325 U.S. at 220).

An injunction requiring the DOC to house Kosilek in a single

cell would not be related to the claims in her complaint. Kosilek's claims are limited to her surgery and her transfer to MCI-Framingham. The only final relief this court could potentially grant her would be limited to her surgery and transfer, not deciding in which kind of cell the DOC may or may not house her. *See Pac. Radiation Oncology*, 810 F.3d at 663. As such, Kosilek has failed to establish the necessary relationship between the claims she asserted in her complaint and the injunctive relief she now seeks.

Even if the proposed injunction did relate to the complaint, Kosilek still would not be entitled to the relief sought. In order to obtain a preliminary injunction, a party must demonstrate a likelihood of success on the merits of the underlying claim. *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015). Kosilek has not established that she has a freestanding right to be housed in a single cell, nor does any such right exist. *See Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *Bell v. Wolfish*, 441 U.S. 520, 541 (1979); *see also Purvis v. Ponte*, 929 F.2d 822, 825-26 (1st Cir. 1991) (allegations that prisoner's roommates were erratic and hostile were insufficient to raise an Eighth Amendment claim). Instead, Kosilek contends that *Spencer* requires that the DOC provide her a single cell, apparently citing to a Westlaw headnote and a passage from

11

the opinion's "Background" section.² [Dkt. No. 103-1].

From this court's read of the case, though, nothing in *Spencer* required the DOC to house the plaintiff in a single cell. The passage that Kosilek cites merely summarizes the contents of a DOC report from 2005 and does not express the First Circuit's opinion on the matter. *See Spencer*, 774 F.3d at 74. Insofar as it weighed in on the report, the First Circuit stressed that its role was not to substitute its own judgment for that of the DOC, but rather to determine whether the latter's judgments were "within the realm of reason and made in good faith." *Id.* at 92. The First Circuit found that the DOC had reasonable security concerns about how it could house Kosilek after surgery. *Id.* at 94. It did not find, and it certainly did not order, that the DOC would have to house Kosilek in a single cell after surgery.³ Consequently, *Spencer* does not support Kosilek's contention that she is entitled to a single cell, and she has otherwise failed to establish a likelihood of success on the merits. The motion for injunctive relief is accordingly denied.

---

² Westlaw headnotes are created by the platform's editors. They are not authoritative, nor are they part of the opinion to which they apply. *See Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 762-63 (7th Cir. 1992).

³ To the extent that the First Circuit expressed its own opinion in disagreeing with the district court's conclusions about the DOC's ability to house Kosilek safely after surgery, these conclusions contemplated housing Kosilek in MCI-Norfolk, not MCI-Framingham. *See Spencer*, 774 F.3d at 93.

**IV.  CONCLUSION**

For the reasons stated above, the plaintiff's motions to amend her complaint and to strike (Dkt. No. 100) and for injunctive relief (Dkt. No. 103) are DENIED.

So ordered.                                /s/ Donald L. Cabell
                                           DONALD L. CABELL, U.S.M.J.

DATED:  September 26, 2022